IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DOUGLAS WAYNE BLAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05CV00938 |
| | ) | |
| R. JAMES NICHOLSON, SECRETARY, | ) | |
| and DEPARTMENT OF VETERANS | ) | |
| AFFAIRS AGENCY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OPINION

TILLEY, District Judge

This is an action brought by Plaintiff Douglas Wayne Blake, proceeding pro se, against Defendants R. James Nicholson, Secretary of the Department of Veterans Affairs, and the Department of Veterans Affairs ("VA") (collectively "Defendants"). Mr. Blake alleges that the Salisbury Veterans Administration Medical Center (the "Salisbury VAMC") discriminated against him based on both disability and race. The matter is now before the Court on Defendants' Motion for Summary Judgment [Doc. # 19]. For the reasons set forth below, the motion is GRANTED.

I.

The facts in the light most favorable to Mr. Blake are as follows. Mr. Blake is a white male who suffers from chronic pulmonary obstructive disease. Mr. Blake's pulmonary condition causes shortness of breath, occasionally severe, and

necessitates the use of an inhaler. (Ex. C, Blake Depo. at 8.) On or about January 11, 2000, the VA determined that Mr. Blake was one-hundred percent disabled based on his disease. (Id. at 9.) Mr. Blake's VA rating decision stated that he "is unable to secure and follow substantially gainful occupation due to disability." (Id. at 14.)

Mr. Blake eventually grew weary of staying at home and contacted the VA about potential employment. (Id. at 17.) On July 28, 2002, Mr. Blake was hired as an Environmental Technician (also known as a "Housekeeping Aide") at the Salisbury VAMC. (Ex. A, Hayes Decl. ¶ 3.) He worked as a probationary employee under a career conditional appointment until his eventual termination approximately eleven months later on June 27, 2003. (Id. ¶ 5.)

The essential duties of an Environmental Technician include sweeping, mopping, running a scrubber, buffing, shampooing carpets, cleaning bathrooms, and dusting. (Id. ¶ 3; Ex. B, Hayes Decl. ¶ 6.) An important part of the position also involves regular, reliable attendance. (Ex. A, Hayes Decl. ¶ 3.) The Environmental Management Services of the Salisbury VAMC experiences frequent staff shortages and any unscheduled absence makes it difficult to maintain a sanitary environment. (Id. ¶ 14.)

In the hospital setting of the Salisbury VAMC it is essential to maintain proper sanitation standards. (Id. ¶ 3.) Failure to perform the essential Environmental Technician job duties can adversely affect patient care and

2

contribute to an environment that could harm patients.  (Id. ¶ 3.)  The Joint Commission on Accreditation has specific standards regarding housekeeping and cleanliness of the hospital wards and facilities, which the Environmental Management Services must meet to ensure that the Salisbury VAMC maintains its accreditation.  (Ex. B, Lawson Decl. ¶ 6.)

Shortly after he began working as an Environmental Technician, Mr. Blake experienced problems performing the essential duties of the job because many of the job-related tasks exacerbated his pulmonary condition.  The inhalation of dust while sweeping and the various products used to clean the floors and stainless steel inhibited Mr. Blake's breathing.  (Ex. C, Blake Depo. at 18-19.)  In fact, Mr. Blake's health improved significantly after he stopped working at the Salisbury VAMC and was no longer exposed to such cleaning chemicals.  (Id. at 20.)  The physical exertion involved in the job also caused Mr. Blake problems.  He found it difficult to perform the necessary walking and bending during each workday and had trouble operating the floor buffer.  (Id. at 10-11, 19.)  Mr. Blake has admitted that he is unable to perform the duties of an Environmental Technician.  (Id. at 21.)

Because of the importance of reliable attendance by employees, the Salisbury VAMC office of Environmental Management Services regularly conducts leave reviews to evaluate whether employees are dependable and consistently report to work.  (Ex. A, Hayes Decl. ¶ 5.)  It was determined during a leave review

3

that Mr. Blake had an excessive number of unscheduled leave days. (Id. ¶ 6.) As of June 3, 2003, approximately ten months after beginning work at the Salisbury VAMC, Mr. Blake had used a total of 213 hours of leave. (Id. ¶ 6; Ex. B, Lawson Decl. ¶ 7.) The 213 hours of leave consisted of the following: 51.5 hours of annual leave; 30 hours of annual leave in lieu of sick leave; 88 hours of sick leave; 1.25 hours of leave without pay; and 42.25 hours of unauthorized absence without leave. (Ex. A, Hayes Decl. ¶ 6.)[1]

The majority of Mr. Blake's leave was unscheduled, which made it difficult for the short-staffed office of Environmental Management Services to accomplish its mission of ensuring proper sanitation at the Salisbury VAMC. (Id. ¶ 6.) Based on the leave review, Mr. Blake's job performance was determined to be unsatisfactory. As a result, on June 3, 2003, Acting Chief of the Salisbury VAMC Environmental Management Services, Bruce Hayes, recommended that Mr. Blake be discharged from employment during his probationary period. (Id. ¶ 7; Ex. A-1, Discharge Recommendation.)

Hollande Lawson, Chief of Human Resources for the Salisbury VAMC, was the VA official with the decision-making authority regarding the removal of probationary VA employees at the Salisbury VAMC. (Ex. B, Lawson Decl. ¶ 3.) The Salisbury VAMC Human Resources office reviewed both Mr. Hayes'

---

[1] Mr. Blake does not dispute the amount or type of leave reported by the Salisbury VAMC (Ex. C, Blake Depo. at 20.)

4

recommendation and Mr. Blake's personnel record and made the determination to terminate Mr. Blake's employment. (Id. ¶ 4.) On or about June 13, 2003, Ms. Lawson notified Mr. Blake by letter that he was discharged from employment effective June 27, 2003 based on "[u]nacceptable attendance and unauthorized absence." (Id. ¶ 5; Ex. B-2, Discharge Letter.)

Pursuant to the terms of the negotiated contract between the VA and the American Federation of Government Employees, discharged employees are offered Last Chance Agreements to retain their jobs. (Ex. B, Lawson Decl. ¶ 11.) Prior to his June 27, 2003 termination date, Mr. Blake was offered a Last Chance Agreement but declined to enter into the agreement and maintain employment with the Salisbury VAMC because of his worsening condition. (Id. ¶ 11; Ex. B-3, Last Chance Agreement; Compl. at 5.)

On October 24, 2005, after filing a charge of discrimination with the EEOC, Mr. Blake filed a Complaint against Defendants alleging discrimination based on disability and race. Defendants filed a timely Answer denying all relevant allegations and asserting various affirmative defenses. Discovery has been completed and Defendants filed the pending Motion for Summary Judgment on August 30, 2006. Mr. Blake has responded in opposition and this matter is ripe for consideration.

II.

Summary judgment is proper only when, viewing the facts in the light most

favorable to the non-moving party, there is no genuine issue of any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Cox, 249 F.3d at 299. There is no genuine issue of material fact if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex, 477 U.S. at 322-23, 106 S. Ct. at 2552. In essence, summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence, and the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 477 S. Ct. at 2512.

III.

Mr. Blake alleges unlawful discrimination on the bases of disability and race in violation of the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act of 1964. Because Mr. Blake lacks direct evidence of discrimination, his claims are analyzed under the three-step burden-shifting framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.

6

Ct. 1817 (1973). Under this framework, Mr. Blake must first establish a prima facie case of discrimination by a preponderance of the evidence. A prima facie case of discrimination creates an inference that the employment action was based on unlawful discrimination. Once a prima facie case is established, the burden shifts and Defendants must give a legitimate, nondiscriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824. Upon Defendants presenting such a reason, the inference of unlawful discrimination is rebutted and Mr. Blake bears the ultimate burden of showing that the stated reason is a mere pretext for a decision motivated by discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000); McDonnell Douglas, 411 U.S. at 804, 93 S. Ct. at 1825.

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves, 530 U.S. at 143, 120 S. Ct. at 2106 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981)). If Mr. Blake fails to either establish a prima facie case of discrimination or to raise a genuine factual dispute concerning his employer's legitimate and non-discriminatory explanation for the alleged discriminatory act, Defendants are entitled to summary judgment. Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).

A.

7

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency. . . ." 29 U.S.C. § 794(a). Thus, to establish a prima facie case of disability discrimination under the Rehabilitation Act, Mr. Blake must show: (1) that he has a disability; (2) that he is an "otherwise qualified individual" for the employment in question; and (3) that he suffered some adverse employment action solely because of his disability. Halperin v. Abacus Tech. Corp., 128 F.3d 191, 197 (4th Cir. 1997), abrogated on other grounds by, Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999); Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995).

1.

While it is undisputed that Mr. Blake suffers from a disability, he is not "otherwise qualified" to be employed as an Environmental Technician. An individual is "otherwise qualified" only if he is "able to meet all of a program's requirements in spite of his handicap." Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 406, 99 S. Ct. 2361, 2367 (1979). "In the employment context, an otherwise qualified person is one who can perform 'the essential functions' of the job in question." School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 287 n.17, 107 S. Ct. 1123, 1131 n.17 (1987) (internal citations omitted); Little v. Fed.

8

Bureau of Investigation, 1 F.3d 255, 257 (4th Cir. 1993).

Mr. Blake has admitted an inability to perform the essential functions of the Environmental Technician position. When asked during his deposition whether he could perform the required housekeeping duties today, he responded: "No . . . [t]oo much strenuous work . . . . <u>If I couldn't handle it then</u>, I sure couldn't handle it today." (Ex. C, Blake Depo. at 21) (emphasis added.) Mr. Blake's condition prevented him from adequately performing the essential housekeeping duties of using sanitizing cleaning solutions, sweeping dusty areas, significant walking, frequent bending, and operating a floor buffer. The inhalation of the various cleaning solutions and excessive dust exacerbated Mr. Blake's pulmonary condition and interfered with his breathing. (Ex. C, Blake Depo. at 18-19.) Mr. Blake's condition also made it difficult to operate the floor buffer and perform the walking and bending necessary to complete his work duties. (<u>Id.</u> at 10-11, 18-19.)

Mr. Blake is further unqualified because of his inability to maintain an adequate level of regular and predictable attendance. "In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis." <u>Halperin</u>, 128 F.3d at 197 (quoting <u>Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.</u>, 31 F.3d 209, 213 (4th Cir. 1994)). "Few would dispute that, in general, employees cannot perform their jobs successfully without meeting some threshold of both attendance and regularity." <u>Gibson v. Henderson</u>, 129 F. Supp. 2d 890, 899

9

(M.D.N.C. 2001) (quoting Walders v. Garrett, 765 F. Supp. 303, 309 (E.D. Va. 1991)); see also Jackson v. Veterans Admin., 22 F.3d 277, 279-80 (11th Cir. 1994) (holding that an employee with sporadic, unpredictable absences was not "otherwise qualified"); Carr v. Reno, 23 F.3d 525, 529 (D.C. Cir. 1994) (holding that "coming to work regularly" is an essential function).

It is undisputed that regular and reliable attendance is a fundamental prerequisite to qualification as an Environmental Technician in the Salisbury VAMC. Mr. Blake missed 213 hours of work over a period of approximately ten months. The majority of Mr. Blake's absences were unscheduled, and 42.25 hours were unauthorized. This excessive number of absences prevented Mr. Blake from maintaining the regular work schedule necessary to carry out the essential functions of his job.

2.

Even though Mr. Blake is unable to perform the essential functions of the Environmental Technician position, it must still be determined whether any "reasonable accommodation" by the Salisbury VAMC would enable him to perform those functions. Arline, 480 U.S. at 287 n.17, 107 S. Ct. at 1131 n.17; Little, 1 F.3d at 257. Employers must make reasonable accommodations for disabled employees unless such accommodation would impose an "undue hardship" on the employer. Little, 1 F.3d at 257-58. Factors to be considered in determining whether an accommodation would impose an "undue hardship" include: (1) the

number of employees; (2) the type of facility; (3) the size of the budget; (4) the type of operation; and (5) the nature and cost of the accommodation needed. See 45 C.F.R. § 84.12; see also Arline, 480 U.S. at 287 n.17, 107 S. Ct. at 1131 n.17.

Despite Mr. Blake's contention to the contrary, there was no reasonable accommodation that the Salisbury VAMC could have provided to allow him to perform the essential functions of an Environmental Technician. Mr. Blake's sole proposed accommodation of "light duty" would not have remedied his underlying inability to perform the essential job duties.[2] A reduction in work hours would not have cured Mr. Blake's breathing problems caused by the work tasks themselves, and the Rehabilitation Act does not require an employer to eliminate any essential job functions to accommodate a disabled employee. See Gilbert v. Frank, 949 F2d 637, 642 (2nd Cir. 1991) (holding that a "'reasonable accommodation' does not mean elimination of any of the job's essential functions"); Hall v. United States Postal Serv., 857 F.2d 1073, 1078 (6th Cir. 1988) (holding that "an accommodation that eliminates an essential function of the job is not reasonable").

Moreover, to actually accommodate Mr. Blake, the Salisbury VAMC would

---

[2] Mr. Blake alleges that a black female performing the same or a very similar job with the Salisbury VAMC was granted a "light duty" assignment. Mr. Blake offers no evidence concerning the black female's identity, disability, or the specific accommodations made; he does, however, concede that she was able to attend work on a more regular basis. Therefore, unlike Mr. Blake, it is possible that the black female's condition could have been reasonably accommodated under the Rehabilitation Act.

be forced to alter the essential housekeeping duties so much that the resulting position would barely resemble that of an Environmental Technician. While Mr. Blake's responsibility would decrease, the necessary work itself would remain; the burden of performing the necessary tasks would simply shift to other Salisbury VAMC employees. Considering the continuous, ongoing nature of hospital sanitation requirements and the staffing issues that plague the office of Environmental Management Services, requiring such an accommodation would unnecessarily burden other Environmental Technicians and create an undue hardship for the Salisbury VAMC.

Finally, there are no accommodations that could address the very reason Mr. Blake's employment was terminated (i.e., the "[u]nacceptable attendance and unauthorized absence"). Even with light duty or a reduced workload, Mr. Blake's absences related to his chronic pulmonary obstructive disease could neither be prevented nor anticipated. This would impose the undue burden of requiring the Environmental Management Services office to make frequent, last-minute staffing adjustments to meet its daily objectives. See Jackson, 22 F.3d at 279 (finding no requirement to accommodate excessive and unpredictable absences).

B.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color,

12

religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of race discrimination, Mr. Blake must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) that similarly situated employees outside of the protected class received more favorable treatment. White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir.2004).

For the reasons detailed above, Mr. Blake's job performance was not satisfactory and he is, therefore, unable to establish a prima facie case of race discrimination. Mr. Blake was admittedly unable to perform the essential housekeeping duties involved in his job and was unable to maintain an adequate, predictable level of attendance.

V.

For the reasons stated above, Defendants' Motion for Summary Judgment [Doc. #19] is GRANTED.

This the day of December 12, 2006

                                              /s/ N. Carlton Tilley, Jr.
                                              United States District Judge

13

Case 1:05-cv-00938-NCT-PTS    Document 25    Filed 12/12/06    Page 13 of 13